IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| QUANTUM FOODS, LLC, *et al.*,[1] | ) | Case No. 14-10318 |
|     Debtors. | ) | (Jointly Administered) |
| ──────────────────────────── | ) | |
| | ) | |
| THE OFFICIAL COMMITTEE OF UNSECURED | ) | |
| CREDITORS OF QUANTUM FOODS, LLC, *et al.*, | ) | |
|     Plaintiff/Counterclaim Defendant, | ) | |
| | ) | Adv. No. 15-50254 (KJC) |
| v. | ) | (D.I. 29) |
| | ) | |
| TYSON FOODS, INC. and TYSON FRESH | ) | |
| MEATS, INC., | ) | |
|     Defendants/Counterclaim | ) | |
|     Plaintiff/Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| QUANTUM FOODS, LLC; QUANTUM FOODS | ) | |
| 213-D, LLC; QUANTUM CULINARY, LLC; GDC | ) | |
| LOGISTICS, LLC; CHOICE ONE FOODS, LLC, | ) | |
|     Third-Party Defendants. | ) | |

## OPINION[2]

### BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

The Official Committee of Unsecured Creditors (the "Committee") of Quantum Foods, LLC seeks to avoid and recover multiple transfers totaling $13,596,149 to Tyson Fresh Meats, Inc. and $151,784 to Tyson Foods, Inc. (referred to jointly herein as "Tyson") pursuant to

---

[1] The chapter 11 cases of the following Debtors are jointly administered: Quantum Foods, LLC; Quantum Foods 213-D, LLC; Quantum Culinary, LLC; GDC Logistics, LLC; and Choice One Foods, LLC (the "Debtors").

[2] This Opinion constitutes the findings of fact and conclusions of law, as required by Fed. R. Bankr. P. 7052. This Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 157 and § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (F), and (H).

Bankruptcy Code §§ 547, 548(a)(1)(B), and 550. The Committee also asserts that any claim Tyson holds against the Debtors' estates should be disallowed pursuant to Bankruptcy Code § 502(d) until Tyson returns the amount of the alleged preferential transfers to the Debtors' estates. In response, Tyson disputes that the transfers are voidable, asserts various defenses, and claims a right to set off a previously allowed post-petition administrative expense claim. The Committee argues that Tyson's setoff claim is not proper and now move for judgment on the pleadings with respect to Tyson's setoff claim.

Undisputed Facts

The parties agree on the following relevant facts:

On February 18, 2014 (the "Petition Date"), the Debtors filed voluntary chapter 11 bankruptcy petitions in this Court. On February 27, 2014, the U.S. Trustee appointed the Committee. On July 14, 2014, this Court entered an order conferring standing on the Committee to investigate and prosecute, among other claims, the Debtors' causes of action under chapter 5 of the Bankruptcy Code.[3]

Approximately two months after the Petition Date, Tyson supplied meat products to the Debtors.[4] On June 17, 2014, Tyson filed a motion for allowance of an administrative expense claim seeking payment for the post-petition deliveries (the "Administrative Claim"). On July 15, 2014 this Court entered the Order Allowing Administrative Expense Claim of Tyson Fresh

---

[3] Order dated July 14, 2016 (Main Case D.I. 525).
[4] While the exact dates of delivery are uncertain, both parties agree that Tyson sold various meat products to the Debtors between April 11, 2014 and April 23, 2014. *See* Defendants' Answer to Complaint, and Defendants' Counterclaims and Third-Party Complaint, p. 14, ¶¶ 8, 10 (Main Case, D.I. 5) (the "Answer") *and* Debtors' Answer to Third-Party Complaint of Tyson Fresh Meats, Inc., p. 3, ¶¶ 8, 10 (Main Case, D.I. 16) (the "Debtors' Answer to Third-Party Complaint").

2

Meats, Inc. Pursuant to 11 U.S.C. § 503(b)(1)(A) ("Administrative Claim Order") in the amount of $2,603,841.09.[5]

On March 25, 2015, the Committee initiated an adversary proceeding against Tyson, seeking to avoid preferential and fraudulent transfers under §§ 547 and 548, to recover those transfers under § 550, and to disallow any of Tyson's claims against the Debtor until after the voided transfers are returned pursuant to § 502(d).[6] On April 30, 2015, Tyson answered the Committee's complaint, denying that Debtors' transfers to Tyson constitute avoidable preferences, and asserting counterclaims and third-party claims against the Debtors. Tyson contends that the Committee's claims to recover avoidable preferential transfers are post-petition causes of action and that Tyson is entitled to set off any recovery claims by the amount of its allowed post-petition Administrative Claim. Tyson also seeks a declaratory judgment that disallowance under § 502(d) applies only to pre-petition claims and therefore will not interfere with the allowed post-petition Administrative Claim. The Committee answered Tyson's counterclaims, and the Debtors answered Tyson's third-party complaint.

The Committee filed a Motion for Judgment on the Pleadings with respect to Count I of the Counterclaim and Third-Party Complaint of Tyson Fresh Meats, Inc. (the "Motion").[7] The Debtors filed a joinder to the Motion.[8] The parties requested oral argument on the Motion, which was held on February 3, 2016.

---

[5] Main Case D.I. 536.
[6] I do not address the § 548 count for fraudulent transfer, a claim that often accompanies a preference claim. Since the parties center on the preference aspects of the question surrounding setoff, for purposes of this decision only, I, too, will focus on the Committee's request for § 547 relief.
[7] Adv. D.I. 29.
[8] Adv. D.I. 32.

3

Discussion

As far as I am able to determine, this case presents a question of first impression in this Court: Whether an allowed post-petition administrative expense claim can be used to set off preference liability. There is no provision in the Bankruptcy Code that deals expressly with post-petition setoff.[9]

The parties agree that *In re Friedman's* makes clear that "goods or services provided to the debtor post-petition cannot be used as 'subsequent new value.'"[10] Tyson instead argues that its claim is an extrinsic setoff claim, wholly unrelated to the concept of new value defense or to the § 547 preference analysis generally. The Committee and the Debtors argue that Tyson's setoff claim is really a "disguised" or "renamed" post-petition new value defense because, like a new value defense, it has the effect of reducing the total amount of preferential transfers restored to the estate. According to the Committee and the Debtors, such a result would also violate

---

[9] Including 11 U.S.C. § 549 – "Postpetition transactions" and 11 U.S.C. § 553 – "Setoff", which deals exclusively with pre-petition setoff.

[10] *See* Opening Br. in Support of Mot. for J. on the Pl., 4-5 (Adv. D.I. 30); Answering Br., 13 (Adv. D.I. 34); *and* Reply, p. 1 (Adv. D.I. 36) (citing generally *Friedman's Liquidating Tr. v. Roth Staffing Co., LP (In re Friedman's, Inc.)*, 738 F.3d 547 (3d Cir. 2013)). This idea is not expressly stated in the *Friedman's* opinion. *Friedman's* dealt with services provided to the debtor pre-petition and payment issued to the creditor for those services post-petition. The *Friedman's* Court held that the post-petition payment did not affect the preference analysis because the petition date marks the end of the preference analysis period.

Both *Friedman's* and the case at hand are bankruptcy cases about the effect of post-petition activity on preference claims, but the parallels end there. In *Friedman's*, the debtor obtained a post-petition wage order to pay (and did pay) the preference-defendant for services performed during the pre-petition preference period. Here, however, preference-defendant Tyson obtained a post-petition order allowing payment by the debtor of its administrative claim for goods delivered post-petition, but Tyson was not paid. In *Friedman's* the preference-defendant asserted a new value defense to the preference action based on new value provided to the debtor during the preference period. Here, Tyson asserts a right to set off its allowed post-petition administrative claim against any liability that may result in the preference action. In *Friedman's*, the plaintiff insisted that the preference-defendant's new value defense based on pre-petition services be adjusted by the post-petition payment of those services. Here, the Committee insists that Tyson not be permitted to set off any post-petition preference judgment with an allowed post-petition administrative claim.

§ 502(d), which prohibits courts from allowing claims by preference-defendants until after they have paid the amount for which they are liable.[11]

If, as contended by the Committee and the Debtors, Tyson's claim is a new value defense, it is not allowable pursuant to the rationale implicit in the *Friedman's* holding that post-petition activity may not factor into the preference calculation.[12] If it is not a new value defense but rather an ordinary setoff claim, as contended by Tyson, set off may be allowable.

**Setoff claim or post-petition new value defense?**

In the absence of explicit statutory pronouncement on the matter, some courts have held that a preference analysis, including the impact of new value on such analysis, need not be cut off at the petition date.[13] However, as expressed by the Third Circuit in *Friedman's*, none of these courts has made a convincing contextual argument and the law and reasoning in favor of confining preference calculations to the preference period is sufficiently weighty.[14] The term "new value," as used in § 547(c)(4), is a specific defense to a preference claim and only has

---

[11] 11 U.S.C. § 502(d).

[12] *Friedman's*, 738 F.3d at 556 ("Extending preference analysis past the petition date would be inconsistent with 11 U.S.C. § 547(b)(5).").

[13] See *Friedman's*, 738 F.3d at 553-54 (citing *Gonzales v. Sun Life Ins. Co. (In re Furr's Supermarkets, Inc.)*, 485 B.R. 672, 733–34 (Bankr. D.N.M. 2012) (holding that cutting off preference calculation at petition date "makes no economic sense"); *Moglia v. Am. Psychological Ass'n (In re Login Bros. Book Co.)*, 294 B.R. 297, 300 (Bankr. N.D. Ill. 2003) ("[B]oth the plain language and policy behind the statute indicate that the timing of a repayment of new value is irrelevant."); *MMR Holding Corp. v. C&C Consultants, Inc. (In re MMR Holding Corp.)*, 203 B.R. 605, 609 (Bankr. M.D. La. 1996) ("An unavoidable post-petition transfer on account of new value extended subsequent to a preference should limit the use of § 547(c)(4) by the amount of the unavoidable transfer, as without a reduction in the new value offset, the transferee would be receiving double use of the new value . . . ."); and *Wallach v. Vulcan Steam Forging (In re D.J. Mgmt. Grp.)*, 161 B.R. 5, 8 (Bankr. W.D.N.Y. 1993) (holding that post-petition payments on new value must be considered under § 547(c)(4))).

[14] See *Friedman's*, 738 F.3d at 554-57. *Friedman's* gives no fewer than five reasons why the preference calculation should be cutoff at the petition date: [1] otherwise the analysis would be perpetually open-ended, [2] the title of § 547 is "Preferences," which suggests it concerns activity occurring during the preference period only, [3] the "hypothetical liquidation test" must be performed as of the petition date, [4] the statute of limitations for filing a preference avoidance action under § 547 in a voluntary case begins to run on the petition date, and [5] extending the preference analysis past the petition date would be inconsistent with the "improvement-in-position" test articulated in § 547(c)(5).

meaning or applicability in the context of a preference analysis which, as articulated by the Third Circuit, is limited to the preference period. Thus it makes no sense to refer to any claim arising outside of the preference period as a new value defense. "New value defense" necessarily involves pre-petition activity, so juxtaposition of the term "post-petition" and the term "new value defense" is incongruous. The essence of Tyson's assertion of its right to retain the value of its allowed post-petition Administrative Claim reveals that it cannot be a "new value defense," precisely because it is comprised exclusively of post-petition activity; a § 547(c)(4) new value defense is limited to pre-petition activity.

I am not persuaded by the Committee's argument that Tyson's claim is a disguised new value defense because it has the effect of reducing the amount of preferential transfers returned to the estate. Tyson's setoff claim does not affect the bottom line of the preference calculation; rather, setting off Tyson's Administrative Claim effects only the amount *paid* to the estate. Tyson's Administrative Claim affects the preference claim externally, not internally. This distinction is not merely semantic but rather evinces the nature of Tyson's claim.

Tyson's claim fits squarely into the definition of "setoff," which is "[a] counterclaim demand which defendant holds against plaintiff, arising out of a transaction that is extrinsic of plaintiff's cause of action."[15] Here, the Committee's cause of action is the §547(b) preference action, whereas Tyson's counterclaim is an independent, pre-existing and wholly unrelated post-petition administrative expense claim.

---

[15] *NVF Co. v. New Castle Cty.*, 276 B.R. 340, 353 (D. Del. 2002), *aff'd* 61 F. App'x 778 (3d Cir. 2003) (citing BLACK'S LAW DICTIONARY 1372 (6th ed. 1990)); *see also Pennington v. Wells Fargo Bank, N.A.*, 947 F. Supp.2d 529, 534-35 (E.D. Pa. 2013) (using the same definition).

I conclude that Tyson correctly characterizes its claim as a setoff claim, rather than as a post-petition new value defense. As articulated by the Third Circuit in *Friedman's*, the preference analysis cannot be affected by post-petition activity.

**Setoff Analysis**

Having concluded that Tyson's claim is an assertion of setoff rights and not a new value defense, I turn to whether Tyson's setoff claim is allowed under the law concerning setoff.[16] The judicial consensus is that "setoff is only available in bankruptcy when the opposing obligations arise on the same side of the . . . bankruptcy petition date."[17] Indeed, many courts have held that setoff applies to mutual, post-petition obligations, including the Courts of Appeals for the Fifth Circuit,[18] and the Tenth Circuit,[19] and bankruptcy courts in the Eastern District of Pennsylvania,[20] and the Districts of New Jersey,[21] Rhode Island,[22] and Massachusetts.[23] Tyson's Administrative Claim is clearly a post-petition obligation of Debtor. Therefore, setoff is permissible in this case only if the allegedly opposing obligation - - the preference claim - - also arises post-petition. Tyson argues that § 547 preferential transfer claims are post-petition causes

---

[16] As noted earlier, Bankruptcy Code §553 addresses set off of pre-petition obligations, including several exceptions not relevant here. 11 U.S.C. § 553(a).

[17] *Pa. State Employees' Ret. Sys. v. Thomas (In re Thomas)*, 529 B.R. 628, 637 n.2 (Bankr. W.D. Pa. 2015); *see also generally Lee v. Schweiker*, 739 F.2d 870 (3d Cir. 1984).

[18] *Palm Beach Cty. Bd. Of Pub. Instruction v. Alfar Dairy, Inc. (In re Alfar Dairy, Inc.)*, 458 F.2d 1258, 1262 (5th Cir. 1972), *cert. den.* 409 U.S. 1048 (1972) (set off of post-petition claims permitted).

[19] *Zion First Nat'l Bank, N.A. v. Christiansen Bros., Inc. (In re Davidson Lumber Sales, Inc.)*, 66 F.3d 1560 (10th Cir. 1995) (set off of post-petition claims permitted).

[20] *Zerodec Mega Corp. v. Terstep of Tex., Inc. (In re Zerodec Mega Corp.)*, 59 B.R. 272, 274 (Bankr. E.D. Pa. 1986) ("Thus, only if we conclude that the commission is a postpetition claim, can Terstep set-off that claim against the postpetition obligation it owes the debtor.").

[21] *Elsinore Shore Assoc. v. First Fidelity Bank, N.A., S. Jersey (In re Elsinore Shore Assoc.)*, 67 B.R. 926, 936 (Bankr. D.N.J. 1986) ("There also exists authority for the concept of setoff to apply to mutual post-petition obligations.").

[22] *In re Pub Dennis of Cumberland, Inc.*, 142 B.R. 38, 41 (Bankr. D.R.I. 1992) (creditor allowed to set off administrative expense claim against amount due under promissory note).

[23] *Mohawk Indus. v. United States (In re Mohawk Indus., Inc.)*, 82 B.R. 174 (Bankr. D. Mass. 1987) (creditor was allowed to set off amounts due to the debtor under a contract that parties continued to operate under post-petition against amounts due to the creditor under another post-petition contract).

of action. The Third Circuit says impliedly in *Friedman's* - - and it is axiomatic - - that a preference cause of action concerns only preference period or pre-petition facts.[24] Just as obvious is the fact that a preference claim can be asserted only *after* the filing of a bankruptcy petition - - or post-petition.

The Bankruptcy Code defines "claim" as a "right to payment."[25] A preference "right to payment," or preference claim, necessarily arises *only* post-petition:

> The estate's causes of action for the preferences did not exist before the filing of the Chapter 11 petition. If the Debtor had never filed bankruptcy, none of the preference actions could ever have been brought by anybody . . . . The fact that the trustee's ability to recover a given transfer as a preference depends on prepetition actions is irrelevant. A preference action can only be initiated in the context of a bankruptcy case after the filing of a bankruptcy case.[26]

**Bankruptcy Code § 502(d)**

Section 502(d) of the Bankruptcy Code states broadly that "the court shall disallow *any* claim of *any* entity . . . that is a transferee of a transfer avoidable under . . . [§ 547] . . . unless such entity or transferee has paid the amount . . . for which such entity or transferee is liable."[27]

The Committee argues that § 502(d) prohibits set off of Tyson's administrative claim against any potential preference liability. The argument overlooks case law recognizing that "administrative expense claims are accorded special treatment under the Bankruptcy Code and are not subject to section 502(d)."[28] Section 502(d), by its terms, does not include administrative expense claims. Conversely, § 503, which addresses administrative expense claims, has no provision similar to 502(d) disallowing administrative claims if the administrative claimant fails to satisfy a preference liability. In *Lids*, Judge Walrath went on to say, "extensions

---

[24] *Friedman's* at 554-57.
[25] 11 U.S.C. § 101(5).
[26] *In re Tek-Aids Indus., Inc.*, 145 B.R. 253, 256 (Bankr. N.D. Ill. 1992).
[27] 11 U.S.C. § 502(d) (emphasis added).
[28] *In re Lids, Corp.*, 260 B.R. 680, 683 (Bankr. D. Del. 2001).

of 502(d) to administrative claims could have devastating effects on a debtor's ability to reorganize. If trade vendors felt that a preference would be used to prevent payment of their administrative claims, they would be extremely reluctant to extend post-petition credit to a chapter 11 debtor."[29]

The Committee and the Debtors emphasize the importance of equality of distribution among a debtors' creditors. After all, the purpose of a preference action is to facilitate this prime bankruptcy policy.[30] Judge Walrath rejected a similar equality of distribution argument in *In re Communication Dynamics, Inc.*, stating that "[e]quity does not mandate that one creditor lose rights it has under state law and the Bankruptcy Code simply because other creditors will benefit by that loss."[31]

Moreover, in *Friedman's*, the Third Circuit observed that the rule of treating creditors equally is not hard and fast:

> If it is a rule in bankruptcy that all creditors must be treated equally, surely the exceptions swallow the rule. It could be said that some creditors are treated more equally than others. There are special provisions for aircraft leases and shopping center leases, and some claims are given priority over others. The balancing of interests in, for instance, wage orders, has been held to justify the type of unequal treatment condemned in cases that would include the post-petition payment in the preference analysis. *See, e.g., In re Primary Health Sys., Inc.*, 275 B.R. 709, 709 (Bankr. D. Del. 2002) (holding payments pursuant to court order allowing debtor to pay employee wages and benefits to be out of reach of § 547). Inequality per se is not to be avoided; indeed, reasoned and justified inequality sometimes prevails, usually based on what is in the best interest of the estate. For this reason, the courts positing that the interpretation that "results in absolutely equal

---

[29] *Id.* at 684.

[30] *See Union Bank v. Wolas*, 502 U.S. 151, 161 (1991) ("[T]he preference provisions facilitate the prime bankruptcy policy of equality of distribution creditors of the debtor. Any creditor that received a greater payment *than others of his class* is required to disgorge so that all may share equally.") (quoting H.R. Rep. No. 95-595, at 177-78, U.S. Code Cong. & Admin. News 1978, pp. 6137, 6138) (emphasis added). *See also Kimmelman v. The Port Auth. of N.Y. & N.J. (In re Kiwi Int'l Air Lines, Inc.)*, 344 F.3d 311, 316 (3d Cir. 2003).

[31] *CDI Trust v. U.S. Electronics, Inc. (In re Commc'n Dynamics, Inc.)*, 382 B.R. 219, 228 (Bankr. D. Del. 2008).

treatment of all unsecured claims" is the "most reasonable interpretation of section 547(c)(4),". . . are misguided.[32]

**Conclusion**

The Committee's Motion for judgment on the pleadings with respect to Count I of Tyson's counterclaim will be denied. An appropriate order follows.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY COURT

Dated: July 25, 2016

---

[32] *Friedman's*, 738 F. 3d at 560 (footnote omitted) (quoting *Furr's Supermarkets*, 485 B.R. at 734).